CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 13 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES FERLON CLARK, | ) |
| | ) |
| Petitioner, | ) Civil Action No. 7:10CV0006 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| DIRECTOR, DEP'T OF CORRECTIONS, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Respondent. | ) |

On August 13, 2007, a jury in Pulaski County convicted James Ferlon Clark of two counts of abduction, two counts of inanimate object sexual penetration, two counts of rape, and one count of forcible sodomy. In accordance with the jury's verdict, the Circuit Court of Pulaski County sentenced Clark to a total term of imprisonment of 320 years. After having failed to obtain relief on direct appeal or in state post-conviction proceedings, Clark has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition is presently before the court on the respondent's motion to dismiss. For the reasons set forth below, the court will grant the respondent's motion. The court will also deny Clark's motions for appointment of counsel.

## Factual Background

Clark's convictions arose from events that occurred around 12:00 a.m. on January 23, 2007 at the apartment of Crystal Thomas.[1] Thomas, who is paralyzed from the chest down as a result of a motor vehicle accident, resided in Dublin, Virginia with her pregnant caretaker, Ashley Taylor, and Taylor's 18-month-old son.

---

[1] Clark was acquitted of some of the charges before the jury. The court will only summarize the facts relevant to the offenses for which he was convicted.

The evidence at trial revealed that Thomas was sleeping in a hospital-style bed in the apartment's living room on the night of the offenses. Around midnight, Thomas heard someone knocking at the door. Mistakenly believing that a friend was delivering a movie, Thomas allowed the petitioner to enter the apartment.

Thomas testified that Clark immediately pulled off her shorts, removed his own pants, and put on a condom. After climbing on top of Thomas, Clark heard a noise and learned that Taylor and her son were also in the apartment. Clark then went to Taylor's bedroom door and demanded that she come out or he would shoot Thomas. When Taylor opened the door, Clark pulled her by her hair into the living room and directed her to commit oral sodomy on Thomas. Once Taylor complied, Clark penetrated Taylor from behind. Thomas then watched as Clark raped Taylor on the floor of the living room.

Clark subsequently turned his focus to Thomas and questioned whether she indeed had no feeling in the lower portion of her body. Clark proceeded to place various objects in Thomas's vagina, including a lit cigarette.

Taylor, who was five months pregnant, became concerned because she was cramping and bleeding, and begged to go to the bathroom. Soon thereafter, Clark led Taylor into the kitchen, where he raped her and anally sodomized her with a lotion bottle. In the meantime, Thomas discovered the condom Clark had worn and placed it in a drawer.

Clark subsequently fell asleep and Taylor ran, still unclothed, to the nearby home of her fiance's sister, who called 911. When the police arrived at Thomas's apartment, Clark pushed out a window screen and fled from the scene. On January 24, 2007, Clark was discovered hiding in a vehicle. The vehicle's owner held Clark at gun point until the police arrived to arrest him.

Clark was transported to the Dublin Police Department, where he waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and agreed to be interviewed by Captain Brian Wade. During the interview, Clark admitted to having sex with Taylor and acknowledged that he might have burned Thomas.

Following the incident in Thomas's apartment, Thomas and Taylor were taken to Carilion New River Valley Medical Center, where Thomas was examined by a gynecologist and Taylor was examined by a forensic nurse. The gynecologist found a small circular burn mark on the outer lip of Thomas's vagina, as well as a vaginal tear that was "consistent with an object being placed in her." (8/9/07 Tr. at 216-217). Similarly, the forensic nurse who examined Taylor testified that Taylor had abrasions on her wrist and hand, abrasions and bruises on her knees, a large hematoma in the perianal area, and abrasions on her cervix that were consistent with trauma.

The Commonwealth also presented DNA evidence linking Clark to the offenses. Patricia Taylor, a forensic scientist with the Western Virginia Regional Laboratory, testified that Clark's DNA was present on the condom that had been retained by Thomas, and that DNA from both victims was found on the condom. DNA from both victims was also discovered on multiple stains inside Clark's underwear, and Taylor's DNA was found on the bottle of lotion that Clark had used to penetrate her.

Clark testified in his own defense at trial. He admitted to having vaginal and anal intercourse with Taylor, but maintained that the vaginal intercourse was consensual. Clark also admitted that he fell asleep at the apartment and that he escaped through a window when the police arrived.

## Procedural History

Clark was indicted by a grand jury in Pulaski County on May 29, 2007, and a three-day jury trial began on August 9, 2007. Prior to trial, a jury of twelve was selected, along with two alternates. Following the lunch recess on the first day of trial, one of the jurors, Tracey Huff, was questioned by the circuit court in the presence of counsel and the petitioner. Huff advised the circuit court that she was having emotional problems and that she did not believe that she could handle being on the jury. Huff emphasized that she had been "crying and throwing up" since the break and that she did not believe that she "could judge [the petitioner] fairly." (8/9/07 Tr. at 119). Consequently, the circuit court, with the agreement of counsel, permitted Huff to be excused from the jury. When the trial resumed, the circuit court advised the other members of the jury that Huff had become ill and was not able to continue as a juror.

The jury ultimately convicted Clark of two counts of abduction, two counts of inanimate object sexual penetration, two counts of rape, and one count of forcible sodomy. In accordance with the jury's verdict, the circuit court sentenced Clark to a total term of imprisonment of 320 years. In so doing, the circuit court emphasized that the case presented "one of the worst fact scenarios [it had] ever heard." (12/21/07 Tr. at 46).

Following sentencing, Clark's trial counsel, Robert Lowman, moved to withdraw as counsel of record for the defendant. The circuit court granted the motion and appointed Alan J. Stratton to represent Clark.

Clark thereafter appealed to the Court of Appeals of Virginia. On August 24, 2008, his counsel filed a petition for appeal pursuant to Anders v. California, 386 U.S. 738 (1967). By separate motion, counsel sought leave to withdraw and additional time for the petitioner to file a pro se supplemental pleading. In the Anders petition, counsel argued that Clark made an implied

4

motion for new trial at the sentencing hearing, and that the circuit court erred in failing to grant the motion.

The Court of Appeals permitted Clark to file a pro se supplemental petition for appeal. In the supplemental petition, Clark raised the following claims: (1) that the circuit court abused its discretion by failing to recognize Clark's implied motion for retrial based on after-discovered evidence; (2) that the circuit court erred in denying Clark's right to represent himself before and during sentencing; (3) that the circuit court violated Clark's Fifth Amendment rights by forcing him to answer the prosecutor's questions about his prior conviction; (4) that the circuit court lied to the jury by telling them that one of the jurors left because she was ill; (5) that the circuit court must not have been clear on the standard of beyond a reasonable doubt because the verdict went against the testimony of the witnesses; and (6) that Clark's right to a fair trial was violated because all of the jurors were white.

On September 29, 2008, Clark's petition for appeal was denied by a three-member panel of the Court of Appeals. Clark then filed petitions for rehearing and rehearing en banc, which were also denied.

On December 18, 2008, Clark filed a pro se petition for appeal in the Supreme Court of Virginia. The question presented in the petition read as follows:

> Did the Court err on it[s] decision to deny my appeal, deny my rehearing and to dismiss my rehearing en banc petition without review when the petition presented questions of "exceptional importance" and contained concrete evidence that proved that the Commonwealth Attorney knowingly, and willfully presented false evidence to the Court, and to jurors to establish my guilt, and to cover the actions of Sergeant Norman Dowdy in the planting of DNA evidence?

In the argument section of the petition, Clark asserted that his Fourteenth Amendment rights

were violated by the presentation of false evidence to the jury and the trial court. He also alleged that the prosecutor knew that police officials had planted DNA evidence.

Clark's appeal was dismissed by the Supreme Court on February 4, 2009. The Supreme Court ruled that Clark had failed to file a notice of appeal in the Court of Appeals as required by Rule 5:14(a) of the Rules of the Supreme Court of Virginia; that the petition for appeal was untimely under Rule 5:17(a); and that Clark had failed to include assignments of error in the petition as required by Rule 5:17(c). The Supreme Court also denied Clark's subsequent request for rehearing.

Clark then filed a petition for writ of habeas corpus in the Supreme Court of Virginia, in which he raised the following claims of prosecutorial misconduct:

1. The prosecutor made improper and misleading remarks during his opening statement that distracted the jury and infected the trial with unfairness, resulting in plain error. The prosecutor inaccurately stated that Thomas had been raped in the kitchen and that she had a cigarette burn on the inside of her vagina. The opening statement caused a juror to become ill and determine that she could not judge the petitioner fairly.

2. The prosecutor was aware of false testimony and failed to correct it. Ashley Taylor lied about bleeding during the sexual incidents. Her testimony was inconsistent with the findings of the forensic nurse. The prosecutor also presented testimony about the location of the cigarette burn on Crystal Thomas that was inconsistent with the gynecologist's findings.

The Supreme Court of Virginia dismissed the petition sua sponte on November 16, 2009.

On January 6, 2010, Clark filed the instant petition pursuant to 28 U.S.C. § 2254. The petition asserts the following claims:

1. The circuit court erred in not fully advising the jury as to why a juror had to be excused and replaced. A juror became sick and said she could not judge the petitioner fairly after hearing the prosecutor's opening statement. The opening statement misstated the evidence and misled the jury.

2. The portion of Ashley Taylor's testimony about bleeding was improper because the prosecutor failed to investigate known inconsistencies between that testimony and the medical findings.

3. The prosecutor presented questionable evidence to the jury by allowing and encouraging Captain Brian Wade to read unreliable transcripts after agreeing not to present them.

4. Despite the foregoing incidents of prosecutorial misconduct, the prosecutor ordered the petitioner's confinement and asked that the petitioner be given the full sentence recommended by the jury.

On March 1, 2010, the respondent moved to dismiss the petition. Clark filed a response to the motion on March 18, 2010. He also filed two motions for appointment of counsel. The motions are now ripe for review.

## Discussion

### I. Petitioner's Motions for Appointment of Counsel

There is no constitutional right to counsel during federal habeas corpus proceedings. Hunt v. Nuth, 57 F.3d 1327, 1340 (4th Cir. 1995); see also Pennsylvania v. Finley, 481 U.S. 551, 555-556 (1987) (holding that "the right to appointed counsel extends to the first of appeal of right, and no further"). However, a court may provide counsel for an indigent inmate pursuing a habeas corpus petition when "the court determines that the interests of justice so require." 18 U.S.C. § 3006(a)(2)(B). Rule 6(a) of the Rules Governing § 2254 Cases provides that a court may appoint counsel if it is "necessary for the effective utilization of discovery procedures." Similarly, Rule 8(c) states that counsel may be appointed "[i]f an evidentiary hearing is required." Otherwise, the United States Court of Appeals for the Fourth Circuit has limited the appointment of counsel to cases where "exceptional circumstances exist," such as when a case is particularly complex or a litigant is unable to adequately represent himself. See Whisenant v.

Yuam, 739 F.2d 160, 163 (4th Cir. 1984). Here, it is clear from the record that the petitioner is able to adequately represent himself, that an evidentiary hearing is not required, and that there are no other exceptional circumstances that would necessitate the appointment of counsel. Accordingly, the petitioner's motions for appointment of counsel will be denied.

## II.     Respondent's Motion to Dismiss

In moving to dismiss Clark's petition for writ of habeas corpus, the respondent argues that all of Clark's claims are procedurally defaulted. For the reasons that follow, the court agrees with the respondent and will grant the motion to dismiss.

### Summary of the Applicable Law

A federal petitioner challenging a state conviction or sentence generally must exhaust remedies available in the state in which he was convicted before seeking federal habeas relief. 28 U.S.C. § 2254(b). To properly exhaust state remedies, the petitioner must fairly present the substance of his claims to the state's highest court. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). The purpose of this requirement is "to give the State the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal citation and quotation marks omitted).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-732 (1991). Procedural default also occurs

"when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order the meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1). This court cannot review the merits of a procedurally defaulted claim absent a showing of cause and prejudice or a fundamental miscarriage of justice. See Harris v. Reed, 489 U.S. 255, 262 (1989).

## Discussion

### A. Claim One

In Claim One, Clark alleges that the circuit court failed to properly advise the jury regarding the juror who had to be excused, and suggests that the circuit court should have told the jury that the juror was incapable of judging the petitioner fairly. Clark also asserts that the prosecutor's opening statement misstated the evidence and misled the jury.

Although Clark raised the first allegation of trial court error in his pro se supplemental petition for appeal to the Court of Appeals of Virginia, he did not present the claim to the Supreme Court of Virginia, either on direct appeal or in his state habeas corpus petition. If Clark now attempted to present the claim in a state habeas petition, the claim would be barred by Va. Code § 8.01-654(B)(2), which generally prohibits successive petitions. The claim would also be barred under Slayton v. Parrigan, 205 S.E.2d 680 (1974), since it could have been raised on direct appeal.

Clark's allegation of prosecutorial misconduct during opening statement was raised in the habeas corpus petition filed in the Supreme Court of Virginia. Since the claim could have been raised on direct appeal, however, the Supreme Court held that it was procedurally barred. See

9

Clark v. Dir. of Dep't of Corrections, No. 382014 (Va. Sup. Ct., Nov. 16, 2009) (citing Slayton v. Parrigan, supra).

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that the procedural rules set forth in Virginia Code § 8.01-654(B)(2) and Slayton v. Parrigan provide adequate and independent grounds for denying claims for federal habeas relief. See, e.g., Fisher v. Angelone, 163 F.3d 835, 844, 851-852 (4th Cir. 1998). Consequently, this court may not review the merits of the petitioner's claims "absent cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default." Id. at 844. To show cause, a petitioner must demonstrate that there was "some objective factor external to his defense," which impeded him from raising the claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude.[2] Id.

In his response to the motion to dismiss, Clark argues that his appellate counsel rendered ineffective assistance by failing to forward the trial transcripts to him after preparing the petition for appeal to the Court of Appeals of Virginia, and that counsel's ineffective assistance provides cause to excuse his default. However, "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional

---

[2] Clark has not attempted to establish that this court's refusal to address his procedurally defaulted claims would result in a fundamental miscarriage of justice, "i.e., that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Reid v. True, 349 F.3d 788, 806 (4th Cir. 2003) (internal citations and quotation marks omitted). In order to make this showing, a petitioner must present "new reliable evidence . . . that was not presented at trial," and the petitioner must "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 324, 327-328 (1995).

10

claim." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Consequently, a claim of ineffective assistance "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" Id. at 452 (quoting Murray v. Carrier, 477 U.S. 489); see also Frasier v. Maschner, 304 F.3d 815, 817 (8th Cir. 2002) ("[I]neffectiveness of appellate counsel may not be asserted as cause to excuse procedural default unless the petitioner has first presented this argument as an independent Sixth Amendment claim to the state courts.") (internal citation and quotation marks omitted). Here, Clark did not present this claim of ineffective assistance of counsel to the Supreme Court of Virginia, and he does not assert that he can demonstrate cause and prejudice for his procedural default of that claim. Accordingly, Clark cannot use ineffective assistance of counsel to demonstrate cause for his failure to raise the allegations asserted in Claim One, and, thus, the claim must be dismissed.[3]

## B. Claims Two and Three

In Claim Two, Clark asserts that Taylor's testimony that she bled during the sexual assaults was improper because the prosecutor failed to investigate known inconsistencies between that testimony and the medical findings of the forensic nurse. In Claim Three, Clark asserts that the prosecutor presented questionable evidence by allowing Captain Brian Wade to

---

[3] In reaching this decision, the court is cognizant of the fact that Clark has proceeded pro se since his petition for appeal was filed in the Court of Appeals of Virginia. It is well-established, however, that neither a petitioner's pro se status or his unfamiliarity with the legal system provides cause to excuse a procedural default. See, e.g., Dellinger v. Bowen, 301 F.3d 758, 766 (7th Cir. 2002) ("[Y]outh and lack of education do not constitute the type of external impediment sufficient to excuse a procedural default."); Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993) (holding that ignorance or inadvertence do not constitute cause to excuse a procedural default); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (holding that a pro se petitioner's ignorance of the law and misconceptions about the operation of the statute of limitations did not justify equitable tolling since they were not extraordinary circumstances beyond his control).

read from an unreliable transcript of the petitioner's statement to police, after the prosecutor had previously agreed not to introduce the tape or transcript of the interview.

Neither of the foregoing claims was presented on direct appeal to the Court of Appeals of Virginia, either in the Anders petition filed by counsel or Clark's pro se supplemental petition for appeal. Thus, the claims were not properly preserved for further appeal to the Supreme Court of Virginia. See Va. Sup. Ct. R. 5:17(c) ("Where appeal is taken from a judgment of the Court of Appeals, only assignments of error relating to questions presented in, or actions taken by the Court of Appeals may be included in the petition for appeal to this Court."). Nonetheless, when Clark petitioned for appeal to the Supreme Court, Clark referenced both issues in the portion of his petition labeled "Statement of the Case." The entire petition was dismissed by the Supreme Court for failure to comply with Rules 5:14(a), 5:17(a), and 5:17(c) of the Rules of the Supreme Court of Virginia.

The Fourth Circuit has held that Rules 5:17(a) and 5:17(c) constitute adequate and independent state procedural rules that foreclose federal habeas review. See O'Dell v. Netherland, 95 F.3d 1214, 1243 (4th Cir. 1996); Hedrick v. True, 443 F.3d 342, 360 (4th Cir. 2006). Consequently, this court may not consider the merits of Claims Two and Three unless the petitioner can demonstrate cause and prejudice for the procedural default or a fundamental miscarriage of justice. In this regard, Clark again contends that his appellate counsel was ineffective in failing to send him the trial transcripts, and that counsel's ineffective assistance provides cause to excuse his default. Because Clark's ineffective assistance claim has not been presented in state court, however, it cannot serve as cause for the procedural default of Claims Two and Three. See Edwards, supra. Thus, Claims Two and Three are procedurally barred from

consideration and must be dismissed.

### C. Claim Four

In Claim Four, Clark restates the allegations of prosecutorial misconduct previously presented in Claims One through Three, and contends that the prosecutor acted improperly in asking the circuit court to impose the full sentence recommended by the jury.

To the extent Clark is reasserting the same arguments presented in Claims One, Two and Three, Claim Four is subject to dismissal for the reasons discussed supra. To the extent that Clark asserts that the prosecutor erred in requesting the full sentence recommended by the jury, such claim is procedurally defaulted, since it was not presented on direct appeal or in the petitioner's state habeas petition.[4] As a result, the court may not review this claim absent a showing of cause and prejudice or a fundamental miscarriage of justice. For the reasons previously discussed, Clark has failed to make either showing. Consequently, Claim Four is also subject to dismissal.

### Conclusion

For the reasons stated, the court will grant the respondent's motion to dismiss and deny the petitioner's motions for appointment of counsel. Additionally, because the petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

---

[4] If Clark now attempted to present the claim in a state habeas petition, the claim would be barred by Va. Code § 8.01-654(B)(2) and Slayton v. Parrigan.

The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and counsel of record for respondent.

ENTER: This 10th day of September, 2010

/s/ Jam Conrad
Chief United States District Judge